## Case No. 2,692.
CHOATE et al. v. MEREDITH.

[Holmes, 500.] [1]

Circuit Court, D. Massachusetts. June, 1875.

DEMURRAGE—LAY-DAYS.

A bill of lading provided for demurrage after lay-days beginning "twenty-four hours after arrival at the above-named port, and notice thereof to the consignee." When the vessel arrived at the port named in the bill of lading, the consignee's wharf was inaccessible on account of ice and lack of sufficient water; whereupon the master took her to the only accessible wharf in the port, and notified the consignee, and offered to deliver the cargo, which offer was not accepted. *Held*, that the lay-days began to run twenty-four hours after notice to the consignee.

[Cited in Fish v. One Hundred and Fifty Tons of Brown Stone, 20 Fed. 202; Manson v. New York, N. H. & H. R. Co., 31 Fed. 299. Applied in The Henry Sutton, 26 Fed. 927.]

Admiralty appeal from a decree of the district court of Massachusetts [unreported]. The libel was brought by [Samuel W. Meredith] the master of a schooner, for demurrage, under the provisions of a bill of lading of a cargo of coal consigned to the appellants [Alden Choate and others].

M. F. Dickinson, Jr., for appellants.

Charles F. Walcott, for libellant.

SHEPLEY, Circuit Judge. The libellant was master of the schooner E. I. Heraty, which brought from Philadelphia to Lynn a cargo of two hundred and forty tons of coal, consigned to appellants. The bill of lading undertook to deliver the coal to appellants at Lynn, for the agreed freight, and was in terms made subject to the conditions of the bill of lading adopted by "Vessel-Owners' and Captains' Association." The reference was to the following clause for demurrage: "And twenty-four hours after arrival at the above-named port and notice thereof to the consignee named. there shall be allowed for receiving said cargo at the rate of one day, Sundays and legal holidays excepted, for

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

every hundred tons thereof; after which the cargo, consignee, or assignee, shall pay demurrage at the rate of eight cents per ton a day, Sunday and legal holidays not excepted, upon the full amount of cargo as per this bill of lading, for each and every day's detention, and pro rata for parts and portions of a day, beyond the days above specified, until the cargo is fully discharged."

The schooner arrived at Lynn, and reported to appellants on the morning of Saturday, Jan. 11, and was fully discharged Thursday, Feb. 13, making twenty-seven days beyond the stipulated time. When the schooner arrived at Lynn, the harbor was much obstructed by ice. By reason of the ice, and because the schooner drew more water than was to be found at appellants' wharf, excepting during a high course of tides, such as occurred twice a month, the appellants' wharf was inaccessible. During the delay, libellant took a steam-tug and broke through the ice, and carried his vessel to a coal-wharf in Lynn, known as "Lamper's Wharf," where he offered to deliver the coal; which offer was not accepted. Without waiving their rights, however, the appellants did take out about sixty tons of coal at Lamper's wharf; and the schooner was moved towards the appellant's wharf, but grounded, and was frozen in.

In the case of Aylward v. Smith [Case No. 687], decided in this court at the October term, 1873, affirming the decree of the district court, it was held, in the case of a bill of lading in the old and usual form, with an agreement for demurrage "after three days," that the lay-days did not begin until after the arrival at the wharf; and as in that case the schooner was frozen up thirty-five feet from the wharf, which was too far for safe delivery of the cargo, that the voyage was not completed, and the lay-days had not begun.

In this case, as the contract stipulates that the lay-days shall commence "twenty-four hours after arrival at the port, and notice thereof to the consignee," and as the vessel arrived at the port and gave the notice to the consignee, and there were suitable wharves accessible, to which the consignee could have ordered the vessel, although his own wharf was obstructed, the time commenced to run twenty-four hours after the arrival and notice to the consignee.

The new form of bill of lading seems to have been adopted to secure the ship-owner against the delay consequent upon an obstruction of the consignee's wharf by other vessels or from other causes, and against being compelled to await his turn to unlade at the consignee's wharf. Under this form of bill of lading, if the consignee desires to exercise the right of requiring the master to unlade at the consignee's wharf, he must pay for the detention consequent upon that wharf's being inaccessible, if there are other suitable and convenient wharves accessible after the arrival of the vessel in port, at which the vessel may be unladen. Decree of district court affirmed, with interest and costs.